Randy HOULE and Rhonda Houle, individually, and their minor son, Dustin Houle, by and through them as Guardians, Plaintiffs-Respondents,

v.

SCHOOL DISTRICT OF ASHLAND, BCI Burke Company, LLC, EMC/Employers Mutual Company, Travelers Property Casualty and Student Assurance Services, Inc., Defendants,

BAD RIVER BAND OF LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS, Defendant-Appellant.

Court of Appeals

*No. 03–0020. Submitted on briefs September 9, 2003.— Decided September 30, 2003.*

2003 WI App 214

(Also reported in 671 N.W.2d 395.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Erick J. Arnold* and *Bad River Band of Lake Superior Tribe of Chippewa Indians* of Odanah.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *David J. Malban* of Duluth, MN.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. The Bad River Band of Lake Superior Tribe of Chippewa Indians appeals an order determining that the *Rimes* made whole doctrine applies to prevent its recovery of health care costs paid on behalf of tribe member Dustin Houle. *See Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982). Bad River contends that federal law authorizes recovery and abrogates *Rimes* and, in any event, the costs were not paid pursuant to an insurance contract. Because the federal law on which Bad River relies does not expressly abrogate the common law, we conclude that *Rimes* applies to this case and accordingly affirm the order on that basis.

## Background

¶ 2. The facts are undisputed. In 1996, Bad River Band member Dustin Houle fell on a public school playground during recess. Among other injuries, he fractured his skull and lost hearing in one ear. He sued the school district and the manufacturer, distributor, and installer of the playground equipment from which he fell. Bad River was included in the suit because of a

711

potential subrogation interest after it paid approximately $9,000 toward Dustin's medical expenses.

¶ 3. Congress enacted legislation known as the Indian Health Care Improvement Act. 25 U.S.C. §§ 1601 through 1683 (1994).[1] The Act creates the Indian Health Service (IHS), an agency within the Department of Health and Human Services. 25 U.S.C. § 1661. Individual tribes may assume control from IHS to locally administer health services and programs in their communities. Bad River has opted for this local control and operates its own Contract Health Service office. Bad River made payments under the auspices of this legislation.

¶ 4. Dustin settled for $120,000 total recovery from the other defendants, then asked for a *Rimes* hearing to determine whether Bad River was entitled to payment on its subrogation claim. Following a finding that Dustin had not been made whole, the trial court interpreted certain provisions of the Act to conclude that Bad River was not entitled to subrogation because Dustin was not actually required to pay for his medical treatment. Bad River appeals.

## Discussion

¶ 5. Bad River claims that federal law grants it a subrogation right against Contract Health Service patients and that Bad River may exercise this right regardless whether the patient has been made whole. Whether a party's subrogation rights limit a plaintiff's right to recovery is a question of law we review de novo. *See Koffman v. Leichtfuss*, 2001 WI 111, ¶ 20, 246 Wis.

---

[1] All references to the United States Code are to the 1994 version unless otherwise noted.

2d 31, 630 N.W.2d 201. The application of the made whole doctrine to undisputed facts is also a question of law, *Ruckel v. Gassner*, 2002 WI 67, ¶ 13, 253 Wis. 2d 280, 646 N.W.2d 11, as is application of a statute to a set of facts. *United Methodist Church v. Culver*, 2000 WI App 132, ¶ 26, 237 Wis. 2d 343, 614 N.W.2d 523.

¶ 6. Subrogation is broadly defined as the substitution of one person in the place of another with reference to a legal right or claim. *See* 73 AM. JUR. 2D *Subrogation* § 1 (2002); BLACK'S LAW DICTIONARY 1440 (7th ed. 1999). Here, for example, Bad River sought to be substituted for Dustin as the entity with the right to collect $9,000 from the defendants.

¶ 7. The subrogation doctrine is based on equitable principles. *Schulte v. Frazin*, 176 Wis. 2d 622, 628, 500 N.W.2d 305 (1993). "Equity does not lend itself to the application of black letter rules." *Id.* (citation omitted). "To resolve the issue in this case we must apply equitable principles to the facts." *Id.* (citation omitted).

¶ 8. There are three main types of subrogation: conventional, legal/equitable, and statutory. *American Ins. Co. v. City of Milwaukee*, 51 Wis. 2d 346, 351, 187 N.W.2d 142 (1971); *see* 73 AM. JUR. 2D *Subrogation* § 3 (2002). Conventional subrogation is based in contract, such as an insurance policy. *See* 73 AM. JUR. 2D *Subrogation* § 4 (2002); *American Ins.*, 51 Wis. 2d at 351. Legal subrogation, also known as equitable subrogation, derives from the doctrine of preventing unjust enrichment and it applies when a person other than a mere volunteer pays a debt that in equity and good conscience, another should pay. *Wisconsin Patients Comp. Fund v. Wisconsin Health Care Liab. Ins. Plan*, 200 Wis. 2d 599, 620, 547 N.W.2d 578 (1996). It is not

dependent on contract or privity, and we allow it when injustice would follow its denial. *Id.* Statutory subrogation, as its name suggests, arises from a legislative act that vests a right of subrogation with a party or class of parties. *See* 73 Am. Jur. 2d *Subrogation* § 3 (2002).

¶ 9. Bad River does not specifically argue that it has any one specific type of subrogation right, although it does point out that there is no insurance contract here, thus excluding conventional subrogation as the basis for its claim. Bad River appears to imply a statutory subrogation right based on 25 U.S.C. § 1621e.[2] This section states in relevant part:

**(a) Right of recovery**

Except as provided in subsection (f) of this section, the United States, an Indian tribe, or a tribal organization shall have the right to recover reasonable expenses incurred . . . in providing health services . . . to any individual to the same extent that such individual, or any nongovernmental provider of such services, would be eligible to receive reimbursement or indemnification for such expenses if—

**(1)** such services had been provided by a nongovernmental provider, and

**(2)** such individual had been required to pay such expenses and did pay such expenses.

¶ 10. It is 25 U.S.C. § 1682, though, that literally conveys a right of subrogation to Indian Health Ser-

---

[2] We note that in *Yukon-Kuskokwim Health Corp. v. Trust Ins. Plan*, 884 F. Supp. 1360 (D. Alaska 1994), the court examined the legislative history of this section and determined it was created to allow collection against recalcitrant private insurers that refused to pay insureds eligible for federal funds, even though the insureds had paid premiums. *Id.* at 1365–66.

vices.[3] Alternatively, there may be an equitable right to subrogation because the federal rules essentially function to place Bad River in a position similar to that of an insurer when it pays for members' health care. Either theory is sufficient to allow us to assume Bad River has a subrogation right, although we question its interpretation and application of 25 U.S.C. § 1621e.

¶ 11. Even assuming Bad River has a subrogation right, subrogation is not always available as a remedy. Sometimes its application is precluded by the anti-subrogation rule, also known as the made whole doctrine and codified in Wisconsin as the *Rimes* doctrine. Under *Rimes*, one who claims subrogation rights is barred from recovery unless and until the injured party is made whole. *Rimes*, 106 Wis. 2d at 272.

¶ 12. While *Rimes* dealt with an automobile insurance company's subrogation rights, *Rimes* is not limited to its facts. *Rimes* noted that its predecessor, *Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 253 N.W.2d 512 (1977), observed that conventional and equitable subrogation have the same effect and accordingly both are subject to the equitable rules regarding subrogation. *Rimes*, 106 Wis. 2d at 270–71. The purpose of subrogation is to prevent double recovery, and this is true regardless how the subrogation arises.

---

[3] 25 U.S.C. § 1682 reads in relevant part: "Indian Health Service may seek subrogation of claims including but not limited to . . . personal injury . . . the proceeds of which shall be credited to the funds established by sections 401 and 402 of the Indian Health Care Improvement Act." This is the only section that expressly grants a right to seek subrogation, and we note that the right is granted only to IHS. Individual tribes and their organizations are not mentioned as they are in § 1621e.

¶ 13. *Rimes* is a common law doctrine, and the common law may be abrogated by statute. *Waukesha County v. Johnson*, 107 Wis. 2d 155, 162, 320 N.W.2d 1 (Ct. App. 1982). A statute does not abrogate or alter the common law unless it is so clearly expressed as to leave no doubt of the legislature's intent. *Id.*

¶ 14. Bad River essentially argues that *Rimes* has been abrogated by 25 U.S.C. §§ 1621e, 1682 and 42 C.F.R. § 36.61[4] and cites two lines of cases to support that argument.[5] The cases Bad River cites, however, deal with Wis. Stat. § 49.65 and the federal ERISA rules.[6] In both cases, we concluded that legislative language specifically abrogated *Rimes*.[7] Merely drawing parallels here is inadequate; Bad River fails to demonstrate how any of the regulations it cites serve to abrogate *Rimes*.

¶ 15. Absent clearly expressed legislative intent, the mere grant of a subrogation right such as in 25 U.S.C. § 1682 is insufficient to abrogate the application of *Rimes*. Indeed, such a statute functions like a subrogation clause in an insurance policy. In *Ruckel*, our supreme court held such a clause in a policy does not prevent application of the made whole doctrine, even when it contains specific language elevating the

---

[4] 42 C.F.R. § 36.61 (1996) states that IHS is the payor of last resort for persons eligible under the Indian Health Care regulations. This section was renumbered 42 C.F.R. § 136.61 (2003).

[5] *See, e.g., Coplien v. DHSS*, 119 Wis. 2d 52, 349 N.W.2d 92 (Ct. App. 1984) (Wis. Stat. § 49.65); *Ramsey Cty. Med. Ctr. v. Breault*, 189 Wis. 2d 269, 525 N.W.2d 321 (Ct. App. 1994) (ERISA).

[6] The Employee Retirement Income Security Act of 1974.

[7] *See Coplien*, 119 Wis. 2d at 57; *Ramsey Cty. Med. Ctr.*, 189 Wis. 2d at 277–78.

insured's subrogation right over the insured's right to be made whole. *See Ruckel*, 253 Wis. 2d 280, ¶ 41. The court concluded that such clauses are inequitable because they do not serve to prevent double recovery or unjust enrichment. Instead, the insurance company had no right to recover payments it made unless the insured was made whole. *Id.*, ¶ 40. Similarly, here 25 U.S.C. § 1682 does not specifically abrogate *Rimes* and therefore, like an insurance clause, simply authorizes subrogation after an IHS client has been made whole.

¶ 16. Bad River acknowledges that IHS's goal is to provide gratuitous health care to Indians. Requiring Dustin and his parents to pay Bad River when they have not fully recouped their own losses would be contrary to both this goal and equity as stated in *Rimes*.

*By the Court.*—Order affirmed.